**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| DIONE JONES, Individually and as Administratrix of the Estate of MILTON MCGUIRE,<br><br>    Plaintiff,<br>   v.<br>DELAWARE COUNTY, as owner and operator of FAIR ACRES GERIATRIC CENTER a/k/a FAIR ACRES, a skilled nursing facility;<br><br>and<br><br>WILLIAM D'AMICO, co-managing agent;<br><br>and<br><br>JOSEPH TRAVAGLINI, co-managing agent; | Civ. No.: |

## COMPLAINT IN CIVIL ACTION

AND NOW, comes the Plaintiff, Dione Jones, as Administratrix of the Milton McGuire, deceased, by and through counsel, Daniel Purtell, Esquire and Andrew P. Watto, Esquire, of McEldrew Young Purtell Merritt, files the instant Complaint in Civil Action, and in support thereof avers the following:

### I.   PARTIES

#### A.   Plaintiff

1. Milton McGuire was an adult individual and resident of Fair Acres Geriatric Center from August 2018, through his untimely death on August 24, 2020 – with intermittent hospitalizations.

2. Milton McGuire passed away on August 24, 2020.

3.      Plaintiff, Dione Jones is an adult individual residing at 1006 North Walnut St., Wilmington, DE 19801.

4.      Plaintiff, Dione Jones, is the daughter of Milton McGuire, was appointed Administratrix of the Estate of Milton McGuire on March 5, 2021, by the Register of Wills in the Register of Wills of Delaware County, Pennsylvania.

5.      Plaintiff brings this action as the personal representative of decedent, Milton McGuire, on behalf of all those entitled by law to recover damages for the wrongful death of Milton McGuire.

6.      Milton McGuire did not bring an action to recover damages for personal injuries during his lifetime, and no other action has been filed to recover damages for the wrongful death of Milton McGuire.

7.      Milton McGuire's wrongful death beneficiaries are as follows:

   a.  Plaintiff, Dione Jones  - see above

   b.  Shawn McGuire – 26 W Roland Rd., Brookhaven, PA 19015

**B.      Defendants**

8.      Defendant, County of Delaware, Fair Acres Geriatric Center, (hereinafter referred as "Fair Acres") is located at 340 Middletown Road, Media, PA 19063, and is owned and operated by Delaware County, Pennsylvania, and as such is acting under the color of state law.

9.      At all times material hereto, Fair Acres is operated as a "skill nursing facility" as defined by 42 U.S.C. § 1395i-3.

10.     At all times relevant hereto, Fair Acres operated as a "long term care nursing facility" as that term is defined in 35 P.S. §448.802A.

11.     Accordingly, Fair Acres is a "licensed professional" as that term is defined in 40 P.S. § 1303.503.

12.     Delaware County owns and operates greater than five percent (5%) of Fair Acres.

13.     At all times relevant hereto, Fair Acres was acting independently, and by and through its authorized agents, employees, servants, contractors, subcontractors, staff and/or partners, and those persons granted privileges at the Fair Acres and holding itself and its agents, employees, servants, contractors, subcontractors, staff and/or partners, and those persons granted privileges at the Fair Acres, out to the public as competent and skillful healthcare providers and practitioners of medicine; and which is personally, directly and vicariously liable, among other things within the Complaint, for the acts and omissions of itself, its agents, employees, servants, contractors, subcontractors, staff and/or partners all of whom played a role in the care provided to Milton McGuire and in the operation of Fair Acres.

14.     Defendant, William D'Amico, is one of the co-managing agents of Fair Acres that has final decision-making authority over the entire operation of Fair Acres, including but not limited to staffing, hiring, budget, policies, procedures, regulatory compliance, and administrative services for Fair Acres.

15.     Defendant, Joseph Travaglini, is one of the co-managing agents of Fair Acres that has final decision-making authority over the entire operation of Fair Acres, including but not limited to staffing, hiring, budget, policies, procedures, regulatory compliance, and administrative services for Fair Acres.

16.     Defendant, Delaware County acts by and through Defendants, William D'Amico and Joseph Travaglini, in the operation of Fair Acres.

17.     At the time of the incidents pled herein, Fair Acres was acting under the control of Delaware County, and was acting by and through its authorized agents, servants, and employees then and there acting within the course and scope of their employment.

18.     At all times relevant hereto, Plaintiff was a recipient of Medicare benefits pursuant to 42 U.S.C.A. §1395, *et seq.*

19.     At all times material hereto, the Defendants owed duties indicated within this Complaint, some of which were non-delegable, to the residents of the Fair Acres, including Milton McGuire, such duties being conferred by statue, existing at common law, and/or being voluntarily assumed by the Defendants.

20.     At all times material hereto, the Defendants owned, operated, managed and controlled the Fair Acres, and engaged in the business of providing healthcare, medical services, therapy, rehabilitation, skilled nursing care, and custodial care services to the general public.

21.     At all times material hereto, it is believed and therefore averred that the Defendants, was directed by and through its policy makers, the Delaware County Commissioners.

## II.      **JURISDICTION AND VENUE**

22.     This case asserts wrongful death and survival actions for Deprivation of Civil Rights Enforceable via 42 U.S.C. § 1983.

23.     Accordingly, the instant case presents issues of federal law, jurisdiction is proper in this forum as federal question pursuant to 28 U.S.C. § 1331.

24.     This court has supplemental jurisdiction over state law claims pursuant to 28 U.S.C. § 1367, which provides that "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." See 28 U.S.C. § 1367(a).

25.     Under 28 U.S.C. § 1391(b)(2), venue is appropriate in the Eastern District of Pennsylvania as a substantial part of the events or omissions giving rise to the instant claim occurred in this judicial district.

### III.     JURY DEMAND

26.     Plaintiff, Dione Jones, as Administratrix of the Estate Milton McGuire, deceased, demands a trial by jury.

### IV.     FACTUAL BACKGROUND

#### A.     Conduct of the Defendants

27.     Milton McGuire was resident of Fair Acres from August 2018 through August 24, 2020.

28.     Milton McGuire was admitted to Fair Acres on August 2018, for a short-term rehabilitation stay.

29.     Upon admission, Milton McGuire required reliable assistance and skilled care in order to complete her activities of daily living and rehabilitation, which necessitated her admission to Fair Acres.

30.     In exchange for financial consideration, and pursuant to the admission contract, Milton McGuire was admitted to Fair Acres in order to obtain and be provided with that assistance.

31.     During his residency at Fair Acres, Milton McGuire was a recipient of Medicaid benefits pursuant to 42 U.S.C.A. § 1396, et seq.

32.     During his residency at Fair Acres, Milton McGuire was also recipient of Medicare.

33.     When the Defendants agreed to admit Milton McGuire, Fair Acres assumed the obligation of providing for his total healthcare, including the provision of nutrition, hydration,

activities of daily living, medical, skilled nursing, occupational therapy, speech therapy, physical therapy, and daily custodial care.

34.     The Defendants exercised complete and total control over the healthcare of all the residents of Fair Acres, including Milton McGuire.

35.     As defined by 40 P.S. § 1303.503, Fair Acres and Defendant D'Amico and Defendant Travaglini were licensed health care providers at all times relevant hereto.

36.     At all times material hereto, Fair Acres held itself out to the public as a professional in the field of adult nursing care, with the expertise necessary to maintain the health and safety of elderly residents such as Milton McGuire.

37.     The Defendants and its employees and agents, and the Delaware County Commissioners, had a duty to ensure that all persons providing care within Fair Acres facility were competent to provide that care to its residents, including Milton McGuire.

38.     At all times material hereto, Fair Acres and its authorized agents, employees, servants, contractors, subcontractors, staff and/or partners, and those persons granted privileges at the Fair Acres owed a duty not to violate the federally protected legal rights of any resident, including Milton McGuire.

39.     At all times material hereto, the Northampton County Commissioners, Fair Acres and its authorized agents,  employees, servants, contractors, subcontractors, staff and/or partners, and those persons granted privileges at Fair Acres had a duty to comply with all provisions of the Omnibus Budget Reconciliation Act of 1987/Federal Nursing Home Reform Act, 42 U.S.C. § 1396r, 1396a(w) at incorporated by 42 U.S.C. § 1396(r) and the implementing regulations found at 42 C.F.R. § 483, et seq.

40.     The above noted statutes and regulations are designed and intended to protect persons such as Milton McGuire against the negligent and reckless care she encountered and the harm she suffered while a resident of the Fair Acres.

41.     At all times material hereto, the Defendants had a duty to establish, adopt and enforce adequate rules and policies and procedures to ensure quality care for residents and addressed the clinical and daily needs of the residents of Fair Acres, including Milton McGuire.

42.     At all times material hereto, the Defendants, and the Delaware County Commissioners, had a duty and responsibility to ensure those policies and procedures addressed the needs of the residents of the Fair Acres, which included Milton McGuire.  This includes policies and procedures addressing the recognition and/or treatment of Milton McGuire's medical conditions, so as to ensure that timely and appropriate care was provided for these conditions whether at Fair Acres or obtained from other medical providers.

43.     It is believed, and therefore averred, that the Defendants, and the Delaware County Commissioners, exercised ultimate authority over all budgets and had final approval over the allocation of resources for staffing, supplies, capital expenditures, and operations of Fair Acres.

44.     The Defendants, and the Delaware County Commissioners, acting through their Administrators, members, managers, and board of directors, had the duty and responsibility to oversee the standard of professional practice by the members of their staff at Fair Acres, including regarding the conduct at issue herein.

45.     At all times material hereto, the Defendants, and the Delaware County Commissioners, had a duty to employ an adequate number of properly trained medical and nursing staff who were qualified to properly care for the residents at Fair Acres, including Milton McGuire.

46.     The Defendants, and the Delaware County Commissioners, had a duty and responsibility to ensure that Fair Acres and its residents, including Milton McGuire, were provided with sufficient staff and resources to guarantee the timely recognition and appropriate treatment of their medical, nursing and/or custodial needs whether within Fair Acres or from other medical care providers.

47.     Despite their knowledge of the likelihood of harm due to these insufficient staffing levels, and despite Complaints of insufficient staffing from staff members, residents and their families, the Defendants, and the Delaware County Commissioners, recklessly and/or negligently disregarded the consequences of its actions, and/or negligently caused staffing levels at Fair Acres to be set at a level that did not allow staff to sufficiently meet the needs of the residents, including Milton McGuire.

48.     The Defendants knowingly sacrificed the quality of care received by all residents, including Milton McGuire, by failing to manage, care, monitor, document, chart, prevent, diagnose and/or treat the injuries and illnesses suffered by Milton McGuire, as described herein, which included malnutrition, dehydration develop and worsening of bedsores, neglect, aspiration, aspiration pneumonia, and untimely death.

49.     At all times material hereto, the Defendants were operating personally or through their agents, servants, workers, employees, contractors, subcontractors, staff, and/or principals, who acted with actual, apparent and/or ostensible authority, and all of whom were acting within the course and scope of their employment and under the direct and exclusive control of the Defendants.

### B.      Injuries of Milton McGuire at Fair Acres Nursing Home

50.      Despite requesting records from Fair Acres and providing the appropriate authority documents, Plaintiff has not received a copy of Milton McGuire's Fair Acres facility chart.

51.      Accordingly, Plaintiff reserves the right to file an Amended Complaint within a reasonable amount of time after receiving the full and complete Fair Acres facility record.

52.      Upon admission to Fair Acres and during the relevant time period, Milton McGuire was dependent upon the staff for his physical, mental, psycho-social, medical nursing and custodial needs, requiring total assistance with activities of daily living, and he had various illnesses and conditions that required evaluation and treatment.

53.      The Defendants knew or should have known that Milton McGuire was at risk for malnutrition, dehydration develop and worsening of bedsores, neglect, aspiration, aspiration pneumonia, and untimely death.

54.      The Defendants, through its acts and omissions, deprived Milton McGuire of adequate care, treatment, supervision, and medicine and caused him to suffer numerous illnesses and injuries, which included malnutrition, dehydration develop and worsening of bedsores, neglect, aspiration, aspiration pneumonia, and untimely death.

55.      As a result of the severity of the negligence the Defendants inflicted upon Milton McGuire, the deterioration of his health and physical condition was negligently accelerated and resulted in both physical and emotional injuries, a loss of dignity, degradation, emotional trauma, severe pain, suffering and mental anguish, unnecessary hospitalizations, and death.

56.      During his residency at Fair Acres, nursing staff failed to provide adequate supervision, care and treatment, and a result, Mr. McGuire frequently did not eat or drink enough

food and water, was not moved and repositioned frequently, and, he suffered malnutrition, dehydration develop and worsening of bedsores, neglect, aspiration, aspiration pneumonia, and untimely death.

57.     During his residency at Fair Acres, Milton McGuire, was dependent on Fair Acres, its officers, agents and employees to assure that her medications and treatments were in accordance with acceptable medical practice.

58.     The Defendants, and its officers, agents and employees, failed, refused or neglected to perform the duties to provide reasonable and adequate health care and supervision to and for Milton McGuire.

59.     The Defendants, its employees, agents, officers and servants provided care and treatment to Milton McGuire and all of the alleged negligent, reckless and wanton acts, omissions and occurrences, herein described, were performed by the Defendants' employees, agents, officers and servants within the course and scope of their agency and employment with defendants and in furtherance of defendants' business.

60.     As set forth in detail in the paragraphs below, Fair Acres' s nursing staff acted with actual malice and willful misconduct which resulted in physical and emotional harm to Milton McGuire and ultimately caused his death.

61.     Milton McGuire, 79, was admitted to the Fair Acres August 2018, for short-term rehabilitation.

62.     Defendants had a custom and practice of trying to keep short-term rehab residents and converting them into long term care residents.

63.     Over the course of his admission, Plaintiff consistently visited her father at Fair Acres.

64.     Plaintiff also brought food and fed her father when she visited him at Fair Acres.

65.     This was consistent each week until March 2020, when Plaintiff was no longer able to visit due to COVID-19.

66.     Upon information and belief, Mr. McGuire was fed and/or assisted with feeding and drinking over the last months of his life while living at Fair Acres.

67.     He was consistently left in bed into the afternoon and therapy services were often missed or skipped.

68.     He was not consistently provided water.

69.     He was weak, dehydrated and not receiving the therapy he was sent to Fair Acres to receive.

70.     He developed an avoidable bedsore on his left heel.

71.     The family was not contacted when the bedsore first developed.

72.     Plaintiff and her family did not learn of their father's bedsore until he was hospitalized on June 29, 2020.

73.     On June 29, 2020, Mr. McGuire was admitted to Riddle Memorial Hospital for suspicion of osteomyelitis in his left heel bedsore.

74.     On July 2, 2020, a surgical debridement was performed on Mr. McGuires left heel bedsore with suspicion for osteomyelitis.

75.     He was discharged back to Fair Acres on July 6, 2020.

76.     On August 16, 2020, Mr. McGuire was transferred to Riddle Memorial Hospital due to respiratory distress.

77.     Upon admission, he was noted to appear dehydrated and cachectic, with respiratory distress and hypoxia.

78.     Milton McGuire died on August 24, 2020, at Riddle Memorial Hospital.

79.     Upon information and belief, Mr. McGuire died from systemic and consistent neglect while a resident at Fair Acres, including but not limited to malnutrition, dehydration develop and worsening of bedsores, neglect, aspiration, aspiration pneumonia, and untimely death on August 24, 2020.

80.     The Defendants, and its employees and staff, failed to adequately provide the necessary and basic care – food and water – to Mr. McGuire that resulted in his untimely death.

81.     It is believed, and therefore averred, that there was not sufficient staff to supervise and care for Mr. McGuire.

82.     The Defendants were fully aware of Milton McGuire's medical history, medical conditions, and co-morbidities and the level of nursing care he would require while a resident at Fair Acres.

83.     Milton McGuire's medical condition and death was a direct result of the negligence, carelessness, recklessness and wanton care provided by the Defendants.

84.     The care plan developed by the Defendants for Milton McGuire was inadequate, inaccurate and/or incomplete and is a result of poor training and education of the staff.

85.     Accordingly, Milton McGuire's care plan did not address his relevant care needs, was not implemented and/or was not revised, to adequately address his risk of

extreme weight loss, malnutrition, development and deterioration of stage IV bedsore, and dehydration resulting in death.

86.    The Defendants failed to plan, develop or implement any necessary interventions to address or minimize the risk of Milton McGuire's extreme weight loss, dehydration, malnutrition, development and deterioration of stage IV bedsores, and death.

87.    The Defendants failed to appropriately provide care and treatment to Milton McGuire while a resident at Fair Acres.

88.    The Defendants failed to ensure that Milton McGuire consumed enough nutrition and water.

89.    As a result of the Defendants' failure to properly assess, treat, and supervise the above-described conditions, Milton McGuire suffered a significant decline in health which directly resulted in his death.

90.    These failures are the result of poor staff education and training.

91.    The Defendants' acts and the acts of its employees constituted actual malice or willful misconduct and were a direct cause of the injury and death of Milton McGuire.

92.    Fair Acres is an over 800-bed skilled nursing home facility.

93.    The Defendants, and the Delaware County Commissioners, had a longstanding, systematic and continuous custom, practice and/or policy to understaff physicians and nursing staff at Fair Acres.

94.    The Defendants, and the Delaware County Commissioners, had actual and/or constructive knowledge that its custom, practice and/or policy of understaffing Fair Acres, with insufficient physicians and poorly trained nursing staff to care for patients, was a substantial factor in bringing harm to its residents, including Milton McGuire.

## COUNT ONE
## DEPRIVATION OF CIVIL RIGHTS ENFORCEABLE
## BY 42 U.S.C. § 1983 – WRONGFUL DEATH

**Plaintiff, Dione Jones, as Administratrix of the Estate Milton McGuire, deceased**
**v.**
**Defendants, Delaware County, Fair Acres Geriatric Center, William D'Amico, NHA, and
Joseph Travaglini ("Defendants")**

95.     Plaintiff hereby incorporates by reference the preceding paragraphs as though the same were fully set forth at length herein.

96.     Defendants are agents of the Commonwealth of Pennsylvania and at all times relevant to this Complaint was acting under color of state law.

97.     Defendants are bound by the 1987 Omnibus Budget Reconciliation Act (OBRA) and the Federal Nursing Home Reform Act (FNHRA) which was contained within the 1987 OBRA. See: 42 U.S.C. § 1396r; 42 U.S.C. §1396a(w) (as incorporated by 42 U.S.C. §1396(r).)

98.     Defendants are also bound by the OBRA/FNHRA implementing regulations found at 42 C.F.R. § 483, et seq., which served to define specific statutory rights set forth in the above-mentioned statues.

99.     The specific detailed regulatory provisions as well as the statutes in question create rights which are enforceable pursuant to 42 U.S.C. § 1983, as the language of these regulations and statutory provisions clearly and unambiguously creates those rights.

100.     The Defendants in derogation of the above statute and regulations, and as a custom and policy, failed to comply with the aforementioned regulations as follows:

a.    failure to ensure that residents, including Milton McGuire, did not suffer verbal, physical and mental abuse as required by 42 C.F.R. § 483.12;

b.    failure to develop and implement written policies and procedures that prohibited the mistreatment, neglect and abuse of residents such as Milton McGuire as required by 42 C.F.R. § 483.12;

c.    failure to adequate train new and existing staff, individuals provided services under a contractual arrangement, and volunteers to care for residents, including Milton McGuire as required by 42 C.F.R. § 483.12 and 42 C.F.R. § 483.95;

d.    failure to treat residents, including Milton McGuire, with respect and dignity, as required by 42 C.F.R. § 483.10 and 42 U.S.C. § 1396r(b)(1)(A);

e.    failure to promote the care of residents, including Milton McGuire, in a manner and in an environment that maintained or enhanced their quality of life while recognizing each resident's individuality as required by 42 C.F.R. § 483.10 and 42 U.S.C. §1396r(b)(1)(A);

f.    failure to develop a comprehensive care plan for residents, including Milton McGuire, which included instructions needed to provide effective and person-centered care of the resident that met the professional standards of quality care as required by 42 C.F.R. §483.21 and 42 U.S.C. § 1396(r)(b)(2)(A);

g.    failure to provide residents, including Milton McGuire, the necessary care and services to allow him to attain or maintain the highest, practicable,

physical, mental and psychosocial well-being, as required 42 C.F.R. § 483.24 and 42 U.S.C. § 1396(r)(b)(3)(A);

h.      failure to conduct an assessment of a resident, such as Milton McGuire, as set out in 42 U.S.C. §1396(r)(b)(3)(A), promptly upon admission and after a significant change in the resident's physical or mental condition, as required by § 42 U.S.C. §1396(r)(b)(3)(C)(i)(ii) and 42 C.F.R. § 483.20;

i.      failure to periodically review and revise a resident's written plan of care by an interdisciplinary team after each of the residents' assessments as set out in 42 U.S.C. §1396(r)(b)(3)(A) as required by § 1396(r)(b)(2)(C) and 42 C.F.R. § 483.21;

j.      failure to use the results of the required resident's assessments, as described above, in developing, reviewing and revising the resident's plan of care as described in 42 U.S.C. § 1396(r)(b)(2) and as required by 42 U.S.C. § 1396(r)(b)(3)(D);

k.      failure to ensure that residents, including Milton McGuire, were provided medically related social services to attain or maintain the highest practicable physical, mental and psychosocial well-being as required by 42 C.F.R. § 483.40(c)(d) and 42 U.S.C. § 1396(r)(b)(4)(ii);

l.      failure to ensure that an ongoing program, directed by a qualified professional, of activities designed to meet the interests of each resident and support the physical, mental and psychosocial well-being of each resident or patient, including Milton McGuire, as required by 42 C.F.R. § 483.24 and 42 U.S.C. §1396(r)(b)(4)(A)(v);

m.  failure to ensure that the personnel responsible for the care  and treatment of residents, such as Milton McGuire, were provided by qualified persons in accordance with each resident's plan of care as required by 42 §1396(r)(b)(4)(B);

n.  failure to provide sufficient nursing staff to provide nursing and related services to assure resident safety and that would allow residents, including Milton McGuire, to attain or maintain the highest practicable, physical, mental and psychosocial well-being, as required by 42 C.F.R. § 483.35 and 42 U.S.C. § 1396(r)(b)(4)(C);

o.  failure to maintain clinical records on all residents, including Milton McGuire, which included the plans of care as set out in 42 U.S.C. § 1396(r)(b)(2) and resident's assessment as set out in 42 U.S.C. § 1396(r)(b)(3), as required by 42 U.S.C. § 1396(r)(b)(6)(C);

p.  failure administer Fair Acres in a manner that enabled the facility to use its resources effectively and efficiently to allow each resident, including Milton McGuire, to attain or maintain the highest practicable physical, mental and psychosocial well-being as required by 42 C.F.R. §483.70, 42 U.S.C. §1396(r)(d)(A) and 42 U.S.C. §1396(r)(d)(1)(C);

q.  failure to ensure that the administrator of Fair Acres met the standards established under 42 U.S.C. §1396(r)(f)(4) as required by 42 U.S.C. §1396(r)(d)(1)(C);

r.  failure to ensure that Fair Acres operated and provided services in compliance with all applicable Federal, State, and local laws, and within the

accepted professional standards which apply to professionals providing services to residents, including Milton McGuire, operating such a facility as Fair Acres, as required by 42 U.S.C. § 1396(r)(d)(4)(A); and,

s.      failure to ensure that Fair Acres's administrator and director of nursing properly monitored and supervised subordinate staff, including staff education, training, qualifications, and competencies, thereby failing to ensure the health and safety of residents or patients, including Milton McGuire, in derogation of 42 C.F.R. § 483.70 and 42 U.S.C. § 1396(a)(w).

119.    Nursing facilities, like Fair Acres, are required to submit annual cost reports to CMS and the state's Medicaid agency.

120.    These reports identify, among other things, the patient census and the hours of respective clinical staff.

121.    By dividing the clinical hours worked by the patient census it is possible to determine how many hours the nursing facility paid for each category of direct caregivers per resident per day for the time period covered by that particular cost report.

122.    This number is referred to as the "HPPD" (Hours Per Patient Day).

123.    According to CMS expectations, during the 24- month period leading up to and preceding Mr. McGuire's admission, Defendants failed to provide the level of staffing necessary to meet the needs of their residents.

124.    During 2016 Defendants understaffed their RN's by almost 66%.  Defendants also understaffed RNs, LPN's and CNA's an average of 16.6% - resulting in a net savings of $6,718,038.

125.    During 2017 Defendants understaffed their RNs by 70%.  Defendants also understaffed their RN's, LPN's and CNA's an average of 14.9% - resulting in a net savings of $5,965,581.

126.    During 2018 Defendants also understaffed their RNs by 70%.  Defendants also understaffed their RN's, LPN's and CNA's an average of 23.2% - resulting in a net savings of $6,539,643.

127.    However, once more accurate staffing information is produced to Plaintiff in discovery the above intentional staffing shortfalls and the associated savings will likely increase.

128.    Discovery is necessary because the information publicly available based on Fair Acres Payroll-Based Journal ("PBJ") staffing hours reported by the facility itself to CMS for the years 2016-2018, is significantly different than the staffing hours data for the same time period as reported on the Fair Acres Medicaid Cost Reports or the annual CMS Cost report.

129.    Defendants, jointly and/or separately, exercised control over the ownership, control, administration, operation and management of the facility prior to and Milton McGuire's period of residency therein, including but not limited to, the creation, setting, funding and/or implementation of budgets; the monitoring of resident acuity levels; the monitoring of staffing levels; creation, monitoring and compliance of policies and procedures; control over resident admissions and discharges; and control over the number of hours of direct care provided to the residents of Defendants' facility by RNs, LVNs, and CNAs.

130.    Defendants, jointly and/or separately also intentionally chose to not use its great financial resources to increase staffing and rectify the staffing shortages at Fair Acres from 2016-2018.

131.     During the years 2016, 2017 and 2018, Fair Acres' balance sheet showed that cash was available to pay for additional staffing.

132.     In 2016, Fair Acres had $4,766,412 cash on hand.

133.     In 2017, Fair Acres had $484,162 cash on hand.

134.     In 2018, Fair Acres had $6,796,891 cash on hand.

135.     Defendants own the building worth approximately $90mm.

136.     Defendants were aware of the millions of dollars in cash on hand available to Fair Acres for the years 2016 through 2018.

137.     Defendants intentionally understaffed Fair Acres from 2016 through 2018, and Defendants intentionally chose not to increase staffing levels at Fair Acres, despite having millions of dollars available to pay for additional staffing, including almost seven million dollars of cash in 2018 when Fair Acres was understaffed Rn's by 70%, and almost five million dollars in 2016, when Fair Acres was understaffed RN's by 66%.

138.     Additionally, according to their balance sheets, in the years 2016, 2017 and 2018, Fair Acres and/or the other defendants paid three times the national average for employee benefits.

139.     This all despite being significantly understaffed during this period.

140.     Fair Acres' balance sheet also indicated expenses for nursing administration that was significantly over the national average, another example of allocating resources anywhere but to increase and rectify the gross understaffing at Fair Acres during 2016, 2017 and 2018.

141.     In further support of its intentional understaffing and failure to allocate resources to promote the health and safety of residents at Fair Acres, including Joseph M. Ellis, from 2016, 2017 and 2018, Fair Acres received at least 45 complaint surveys received by the Pennsylvania

Department of Health and received 27 deficiencies, including two that resulted in actual harm to Fair Acres residents.

142.   Specifically, in 2016, Fair Acres received at least 9 complaint surveys, and was cited by the Pennsylvania Department of Health for the following deficiencies:

a.   Violation of 483.10(b)(11) – failure to notify a resident's family of a resident's change in condition and transfer to the hospital;

b.   Violation of 483.25(m)(2) – failure to correctly administer a medication in accordance with physician's orders which caused a significant medication error requiring hospitalization and resulting in actual harm to the resident;

c.   Violation of 483.25(h) – failure to ensure residents ingested their medications when administered and failure to provide appropriate supervision on wanderguard unit;

d.   Violation of 483.25 – failure to follow physician order for the administration of insulin;

e.   Violation of 483.25(b) – failure to provide routine and follow up eye examination to resident;

f.   Violation of 483.35(9) – failure to store food under sanitary conditions in one of its kitchens;

g.   Violation of 483.35(i)(3) – failure to maintain sanitary conditions of two outside dumpsters;

h.   Violation of 483.60(c) – failure to act upon pharmacy recommendations for resident;

i.   Violation of 483.60(b),(d), and (e) – failure to ensure medications were properly stored and labeled per professional standards and failed to dispose of medications after the expiration period;

j.      Violation of 483.75(l)(1) – failure to provide complete, accurate documentation of the dosage of insulin to be administered to resident's;

k.      Violation of 483.13(c) – failure to report an alleged incident of serious physical injury to State Department of Aging for a resident who sustained a fracture of the tibia and fibula while being improperly transferred using a mechanical lift;

143.    Specifically, in 2017, Fair Acres received at least 19 complaint surveys, and was cited by the Pennsylvania Department of Health for the following deficiencies:

a.      Violation of 483.21(b)(3)(ii) – failure to implement the care plan developed to address falls for a resident and it was observed that the facility failed to ensure the staff member was seated next to the resident as indicated in the care plan and the surveyor had to point this out to the staff member since the resident was in danger of falling;

b.      Violation of 483.10(a)(1) – failure to ensure that resident received means in a group setting in a manner that respected their dignity;

c.      Violation of 483.24(c)(1) – failure to meet the recreational needs of residents by failing to develop appropriate activity programming for cognitively impaired and dependent residents;

d.      Violations of 483.24 and 483.25(k)(1) – failure to act timely on recommendations made by consulting physician for resident where recommended labs and medication were delayed;

e.      Violation of 483.(a)(1)(2) – failure to ensure that an ophthalmologist services were obtained in a timely manner;

f.      Violation of 483.25(g)(1)(3) – failure to ensure that residents maintained acceptable parameters of nutritional status based on a failure to monitor a resident's weight loss;

144. Specifically, in 2018, Fair Acres received at least 17 complaint surveys, and was cited by

the Pennsylvania Department of Health for the following deficiencies:

    a.      Violation of 483.25(g)(4)(5) – failure to ensure that a resident receives the appropriate treatment to prevent complications of enteral feeding;

    b.      Violation of 483.25(k) – failure ensure that non-pharmaceutical interventions were attempted prior to the administration of as needed pain medications;

    c.      Violation of 483.10(a)(1)(2)(b)(1)(2) – failure to provide care in a manner that promoted resident dignity;

    d.      Violation of 483.10(g)(17(18)(i)-(v) – failure to ensure the understanding of required Notice of Medicare Provider Non-Coverage and for the appeal process;

    e.      Violation of 483.20(g) – failure to ensure the accuracy of resident assessments which was confirmed by interview of the facility administrator;

    f.      Violation of 483.21(b)(2)(i)-(iii) – failure to revise a care plan to meet the nutritional needs of resident;

    g.      Violation of 483.25(e)(1)-(3) – failure to provide a program to retain bladder function;

    h.      Violation of 483.10(g)(14)(i)-(iv)(15) – failure to notify the physician of a change in condition in a timely manner;

    i.      Violation of 201.14(a) – failure to comply with the requirements of Act 52, relating to nursing home assessment of a surcharge per bed to the Patient Safety Authority;

    j.      Violation of 483.25(d)(1)(2) – failure to ensure residents were free of accidents during a transfer via a mechanical lift

that resulted in actual harm to a resident with transfer to the
hospital and a subdural hematoma;

145.    Plaintiff alleges that each of aforementioned complaint surveys and deficiencies

from 2016-2018, reported by the Pennsylvania Department of Health against Fair Acres

demonstrate  Defendants' ownership, control, administration, managerial and operational

function failures that were intentional and had a direct impact on the amount and quality of care

delivered to Joseph M. Ellis and were taken in furtherance of operational and managerial

objectives.

146.    Plaintiff alleges that Defendants jointly and/or separately, engaged in a

systematic process of ensuring it maintained the highest acuity levels possible while failing to

provide sufficient and qualified staff to meet the individual needs of their residents during Milton

McGuire's period of residency therein.

147.    Defendants had millions of dollars in cash available between 2016 and 2018, yet

intentionally chose to understaff Fair Acres.

148.    Plaintiff alleges that this understaffing and other systemic failures by

Defendants, although profitable for Defendants, directly resulted in their failure to provide the

necessary and basic services Joseph M. Ellis needed, and that Defendants' failures resulted in

causing, contributing and/or increasing the risk of the injuries that caused Mr. Ellis' multiple

falls and death.

149.    Such understaffing caused and/or created a perfect formula for not having

proper assessments, supervision, monitoring, training, assistance and implementation of

necessary medical and/or nursing treatment that caused, failed to timely assess and/or failed to

properly assess, implement necessary and appropriate interventions to address Joseph M. Ellis'

high fall risk, which directly caused his avoidable fall and horrific and untimely passing.

150.    Defendants' intentional, systemic and profitable practice of understaffing of RNs and the nursing staff as a whole at Fair Acres, and their failure to provide the necessary and nursing care and assessment for residents including Milton McGuire of caused, contributed and/or increased the risk of Mr. McGuires' injuries and lead to his suffering and death.

151.    Additionally, Defendants jointly and/or separately through its administrator, directors and managers put the health and safety of the residents at risk by consciously and knowingly fostering, creating and/or maintaining a facility that ignored its own policies and procedures, ignored state and federal regulations, and had its own unwritten rules that placed residents like Milton McGuire in harm's way.

152.    Fair Acres was significantly understaffed before and during the residency period of Milton McGuire.

153.    Plaintiff will obtain further evidence to support this systemic and widespread understaffing by Defendants through census, HPPD, punch detail reports, daily staffing and assignment sheet, and other documents kept by Defendants that relate to staffing levels at Fair Acres.

154.    Evidence of the systematic violations of these rights, and that the violations of these rights were part of a "custom and policy" and placed each of the residents, including Mr. McGuire, in danger.

155.    The Defendants, and the Delaware County Commissioners, failed to act despite this knowledge and exhibited deliberate indifference to the safety and well-being of the residents, including Milton McGuire.

156.    There were numerous instances of deliberate indifference by the policy makers for the Defendants and the Delaware County Commissioners, as evidenced by their repeat deficiencies

on Department of Health surveys.  Those repeat deficiencies evidence a custom and policy on behalf of the policy makers.

157.    Moreover, it is believed and therefore averred, that the Delaware County Commissioners were made aware of the Department of Health Survey results.

158.    The Department of Health survey results, and repetition of deficiencies, evidence a staff that was poorly trained.

159.    The management and the licensee of Fair Acres was cited for a repeat deficiency on between 2016 and 2020, some repeat deficiencies.

160.    These deficiencies evidence the lack of training on behalf of the employees and staff of Fair Acres.

161.    It is believed, and therefore averred, that repeat deficiencies are evidence of a lack of training of the employees and staff of Fair Acres.

162.    For example, the fact that Defendants and its staff were repeatedly cited for failure to supervise its residents to prevent accidents is evidence of a policy and custom that directly led to the injuries suffered by Milton McGuire as detailed in the Complaint.

163.    The Department of Health surveys regarding Fair Acres, clearly establishes that the violations of these rights were not limited to singular and isolated incidents, but were part of a much broader and more consistent "custom and policy" of the defendant to violate patients' rights.

164.    The Defendants, and the Delaware County Commissioners, knew, or should have known, of the aforementioned issues that were occurring with the care of Milton McGuire, as they were placed on actual and/or constructive notice of the same, through their own reports, CMS Quality Indicator Reports, CASPER Reports, and Federal and Pennsylvania Department of Health Surveys.

165. As a proximate result of the Defendants' actionable derogation of its regulatory and statutory responsibilities as above-described, and its deliberate indifference, Milton McGuire was injured as previously referenced, and suffered pain, emotional distress, economic damages and death as a result of the poor care and treatment which caused malnutrition, dehydration, weight loss, pressure ulcers, aspiration, aspiration pneumonia, and resulted in his untimely death.

166. As a proximate result of defendant's actionable derogation of its regulatory and statutory responsibilities as above-described, Milton McGuire was injured as previously referenced, and suffering pain, distress and death as a result of the poor care and treatment which allowed him to suffer malnutrition, dehydration, bedsores, infection, aspiration, aspiration pneumonia, and resulted in his untimely death. As such plaintiff has suffered and is entitled to recover the following damages, as well as an award of reasonable counsel fees pursuant to 42 U.S.C. § 1988:

a.   money for funeral and estate expenses incurred because of the death of Milton McGuire;

b.   damages for the lost services, assistance, guidance, counseling, companionship and society of Milton McGuire;

c.   all pecuniary benefits which they would have received from Milton McGuire;

d.   the expenses of administration; and

e.   other losses and damages permitted by law.

**WHEREFORE**, the Plaintiff, Dione Jones, as Administratrix of the Estate Milton McGuire, deceased, demands compensatory and consequential damages from the Defendants in

excess of Seventy-Five Thousand Dollars ($75,000.00), plus interest, costs of suit, attorneys' fees and such other just and equitable relief as this Honorable Court deems proper.

<u>**COUNT TWO**</u>
<u>**DEPRIVATION OF CIVIL RIGHTS ENFORCEABLE BY 42 U.S.C. §1983 - SURVIVAL**</u>

**Plaintiff, Dione Jones, as Administratrix of the Estate Milton McGuire, deceased**
**v.**
**Defendants, Delaware County, Fair Acres Geriatric Center, William D'Amico, NHA, and**
**Joseph Travaglini ("Defendants")**

167.    Plaintiff hereby incorporates by reference the preceding paragraphs as though the same were fully set forth at length herein.

168.    As a proximate result of the Defendants' actionable derogation of its regulatory and statutory responsibilities as above-described, Milton McGuire was injured as described above and suffered pain, distress and death as a result of the poor care and treatment she received at Fair Acres, including allowing her to suffer malnutrition, dehydration, bedsores, neglect, aspiration, aspiration pneumonia, and results in his untimely death.

169.    Thus, Plaintiff has suffered and is entitled to recover the following damages, as well as an award of reasonable counsel fees pursuant to 42 U.S.C. § 1983:

       a.    Pain, suffering, inconvenience, fright and mental suffering, including anxiety and nervousness of Milton McGuire until the time of his death;

       b.    Nursing expenses incurred on Milton McGuire's behalf; and

       c.    other losses and damages permitted by law.

**WHEREFORE**, the Plaintiff, Dione Jones, as Administratrix of the Estate Milton McGuire, deceased, demands compensatory and consequential damages from the Defendants in excess of Seventy-Five Thousand Dollars ($75,000.00), plus interest, costs of suit, attorneys' fees and such other just and equitable relief as this Honorable Court deems proper.

Respectfully submitted,

**MCELDREW YOUNG PURTELL MERRITT**

Dated: 08/23/22                                        _____/s/ Andrew P. Watto_____
                                                        Andrew P. Watto, Esquire
                                                        *Attorney for Plaintiff*